THE STATE EX REL. UNION ELECTRIC LIGHT & POWER COMPANY and CUPPLES STATION LIGHT, HEAT & POWER COMPANY v. FRED GEHNER, as Assessor of City of St. Louis and as President of Board of Equalization of City of St. Louis, and CORNELIUS M. MCDONALD ET AL., as Members of Board of Equalization of City of St. Louis.

Court en Banc, August 6, 1926.

**1. TAXATION: Franchises of Electric Light and Power Companies: Impossible Method.** The sole power to assess the franchises of an electric light and power company and the franchises of an electric transmission company is by statute conferred upon the State Tax Commission; and if the statutes prescribe no method, or an impossible method, of making an assessment of such franchises, no tax can be levied. No local assessment board can make an additional assessment.

**2. ———: ———: Local Assessment.** All the properties of electric light, power and transmission companies, tangible and intangible, including franchises, having been considered and valued for assessment by the State Board of Equalization, the local assessment board has no authority to place an additional valuation and assessment upon the franchises of such companies.

---

Corpus Juris-Cyc. References: **Taxation**, 37 Cyc., p. 982, n. 49, 51; p. 983, n. 60; p. 988, n. 91.

*Certiorari.*

RECORD QUASHED.

*Rassieur & Goodwin* for relators.

(1) The franchises of electric power and light companies and electric transmission lines are required by law to be assessed in the same manner and by the same authority as the franchises of railroads, and as the franchises of railroads are assessed by the State Board of Equalization, it follows that the franchises of electric power and light companies and electric transmission lines must be likewise assessed. Sec. 13056, R. S. 1919, as amended Laws 1923, pp. 372, 373; Secs. 12999, 13000, R. S. 1919; State ex rel. Hagerman v. Electric Ry. Co., 279 Mo. 627; State ex rel. Hammer v. Wiggins Ferry Co., 208 Mo. 645. (2) Section 13000, R. S. 1919, read in connec-

tion with Section 13056, as amended, specifically requires that the franchises of relators be assessed by the State Board of Equalization. (3)   Sections 13000 and 13056, as amended, are *in pari materia* and must be construed together.   State ex rel. Hammer v. Wiggins Ferry Co., 208 Mo. 639; 25 R. C. L., "Statutes," secs. 285, 295.   (4)   When the duty of assessing property is placed by law upon the State Board of Equalization, it is presumed to have performed that duty.   State ex rel. Hammer v. Wiggins Ferry Co., 208 Mo. 646.   (5)   There can be no lawful assessment of property in this State except in the manner prescribed by law.   State ex rel. Koeln v. Lesser, 237 Mo. 310, 318.

*Julius T. Muench* and *Oliver Senti* for respondents.

(1)·   Prior to the amendment of Section 13056 in 1923, the Assessor of the City of St. Louis was authorized by law to assess the franchises of the relators for taxation.   Where the Tax Commission is without authority by law to assess the franchise of an electric company the power is in the local assessor.   Sec. 13000, R. S. 1919. (2)   The only report which railroads are required to make to the State Tax Commission is one setting out in detail the total length of their road including branch or leased roads, the entire length in this State and the length of double or sidetracks, with depots, watertanks and turntables, the length of such road, double or sidetracks in each county, municipal township, incorporated city, town or village through or in which it is located in this State and the total number of engines and cars of every kind and description, and all other moveable property owned, used, or leased by them.   Sec. 13002, R. S. 1919.   A statute which requires a taxpayer to return his property for taxation compels him only to report to the assessing officers the specific kinds of property mentioned therein. State ex rel. v. Lesser, 237 Mo. 310: Leavell v. Blades, 237 Mo. 695.   (3)   A decision of the Supreme Court is not decisive except upon points actually raised.   Cape Girardeau S. W. Ry. Co. v. Hatton, 102 Mo. 45; Koerner v. St. Louis Car Co., 209 Mo. 156.

RAGLAND, J.—Relators seek by this proceeding to have quashed certain records of the Board of Equalization and of the Assessment Division of the Department of Finance of the City of St. Louis, relating to the assessment for taxation of their respective franchises. In lieu of the return of a complete transcript of the record of the proceedings challenged called for by our writ, the parties stipulated as to the facts which they deemed determinative of the controversy between them.   From such stipulation it appears:

"That relators are corporations organized under the laws of the State of Missouri with offices in the city of St. Louis, Missouri, and

engaged in the business of generating and distributing electrical energy, light, heat and power as public utilities in the city of St. Louis and elsewhere, and that as such they are electric light and power companies and electric transmission lines within the meaning of Section 13056 of the Revised Statutes of Missouri for 1919, as amended by Laws of 1923, pages 372 and 373, as construed by State Tax Commission.

"That respondent Fred Gehner is the duly appointed, qualified and acting Assessor of the City of St. Louis, and as such is the ex-officio president of the Board of Equalization of the City of St. Louis; that during the year 1925 Cornelius M. McDonald, Raymond G. Scott, John P. Shine and Joseph W. Hannauer were the duly appointed, qualified and acting members of the Board of Equalization of the City of St. Louis for the year 1925; that said respondent Fred Gehner, as Assessor and as president of the Board of Equalization of the City of St. Louis, has the care and custody of the books and records of said Board of Equalization of the City of St. Louis, Missouri."

"That relators made return to the State Tax Commission of all of their tangible property and the value thereof as of June 1, 1924, in the manner and at the times required by law for the filing of returns by railroads for assessment for taxes for the year 1925, except such of their tangible property as corresponded to the local property of railroads, which was returned to the local assessors; that all of relators' property, tangible and intangible, including franchises, has been considered and valued for assessment by the State Board of Equalization; that in the assessment thereof the State Board of Equalization was of the opinion that the total value of all of relators' property did not exceed the value placed by said board upon the tangible property, and that therefore said board placed no valuation and made no assessment on the franchises of relators; . . .

"That on the 10th day of March, 1925, William Buder, then Assessor of the City of St. Louis, and the predecessor in office of respondent Fred Gehner, notified relators in writing that he proposed to assess the franchises of relators as electric light and power companies for taxation; that relators made no return on their franchises to William Buder, and that thereafter said William Buder caused to be extended on the assessment books of the city of St. Louis, Missouri, assessments against the franchises of relators on which to levy taxes for the year 1925, as follows:

"Franchises owned and used by Union Electric Light & Power Company in the conduct of its electric light, power and heating business, $5,000,000.

"Franchises owned and used by Cupples Station Light, Heat & Power Company in its light, heat and power business, $150,000.

"That thereupon relators duly took and perfected an appeal from said assessments to the Board of Equalization of the City of St. Louis,

respondents herein; that a hearing was held by said respondents, sitting as said board, upon said appeal on the 9th day of April, 1925; . . . that on April 10, 1925, said board entered its order rejecting said appeals and sustaining the order of the Assessor in assessing the franchises of relators as aforesaid; . . .

"That thereafter respondent Fred Gehner, or his predecessor in office, William Buder, . . . caused said assessments to be extended on the tax books in the office of the Assessor of the City of St. Louis, and was at the time of the institution of this proceeding about to deliver to the Comptroller of the City of St. Louis tax bill; against relators on the basis of said assessments, and that the Comptroller of the City of St. Louis was about to certify and deliver said tax bills to the Collector of the City of St. Louis to be collected from relators."

The question at issue is whether the Assessor of the City of St. Louis is authorized to assess relators' franchises, or whether that power is vested in the State Tax Commission. The answer must be derived from relevant statutes. We quote from Sections 12999, 13000 and 13056 (as amended in 1923), Revised Statutes 1919:

Section 12999: "The franchises (other than the right to be a corporation) of all railroad, street railroad, bridge, telegraph, telephone, conduit, water, electric light and gas companies, and of all other similar corporations owning, operating and managing public utilities, . . . shall be assessed for the purposes of taxation at the same time and in the same manner as other property of such corporation is now or may hereafter be required to be assessed; and there shall be levied upon the assessed value of such franchise the same rate of taxation as may be levied upon other property of such corporation . . ."

Section 13000: "The State Board of Equalization in cases of railroads, street railroads, bridges, telegraph, telephone companies and all other corporations whose property the State Board of Equalization is now or may hereafter be required to assess . . . shall ascertain, fix and determine the total value for taxable purposes of the entire property of such corporation, tangible and intangible, in this state, and shall then assess the tangible property and deduct the amount of such assessment from the total valuation and enter the remainder upon the assessment list or in the assessor's books, under the head of 'all other property.' "

Section 13056: "All (toll) bridges over streams dividing this State from any other State . . . or over navigable streams within this State. . . . and all property, real and personal, including the franchises owned by telegraph, telephone, electric power and light companies, electric transmission lines, oil pipe lines and express companies, shall be subject to taxation for state, county,

municipal and other local purposes to the same extent as the property of private persons. And taxes levied thereon shall be levied and collected in the manner as is now or may hereafter be provided by law for the taxation of railroad property in this State, and county courts and the county and state boards of equalization are hereby required to perform the same duties and are given the same powers in assessing, equalizing and adjusting the taxes on the property set forth in this section as the said courts and boards of equalization have or may hereafter be empowered with in assessing, equalizing and adjusting the taxes on railroad property; and the president or other chief officer of any such bridge, telegraph, telephone, electric power and light companies, electric transmission lines, oil pipe lines, or express company, or the owner of any such toll bridge, is hereby required to render statements of the property of such bridge, telegraph, telephone, electric power and light companies, electric transmission lines, oil pipe lines, or express companies in like manner as the president or other chief officer of the railroad company is now or may hereafter be required to render for the taxation of railroad property.''

From Section 13000 it appears that the franchises of railroad companies are to be assessed by the State Board of Equalization, and in this manner: it ''shall ascertain, fix and determine the total value of the taxable property of the entire property of the corporation, tangible and intangible, . . . and shall then assess the tangible property and deduct the amount of such assessment from the total valuation and enter the remainder upon the assessment list . . . under the head of 'all other property.' '' And from Section 13056. that the franchises of an electric power and light company and electric transmission lines are required to be assessed by the same board and in the same manner as those of railroad companies. (All of the powers of original assessment conferred in name upon the State Board of Equalization are by Section 1284, Revised Statutes 1919, vested in the State Tax Commission.) These sections would seem to conclusively settle the question of where the power to assess the franchises of electric power and light companies and electric transmission lines is lodged. But respondents say that the basis of the assessment of the property and franchises of a railroad company is the sworn statement of its president or other chief officer in which is set forth the length of the road, the length of the double and side tracks. the number of engines and cars of all kinds and descriptions used by them—all as prescribed by Section 13002, Revised Statutes 1919— and that as electric light and power companies and electric transmission lines have no such property, it is impossible for them to render statements of their property ''in like manner as the president or other chief officer of the railroad company is . . . required to

render for the taxation of railroad property.'' Their argument seems to be that, while the statute invests the State Tax Commission with power to assess franchises of such companies as relators, it prescribes no method, or an impossible method, for it to follow in making the assessments, hence the power must be exercised by the local assessor. The conclusion is a *non sequitur*. The sole *power* to assess the franchises in question is by the statute conferred upon the State Tax Commission; if the manner of making the assessments as prescribed by the law can by no possibility be conformed to, then no tax can be levied. [State ex rel. v. Lesser, 237 Mo. 318.]

An opinion by Hon. George W. Crowder of the Attorney-General's office, rendered to the State Tax Commission, is appended to relators' brief. Certain portions of that opinion so completely dispose of respondents' contention that we quote them:

''There is no question about how railroad property should be assessed. Section 13001, Revised Statutes 1919, may be said to be the index finger of authority pointing to the right to assess railroad property, and Section 13002 enumerates certain specific property in pointing out the manner of such assessment. This has been called the distributable property of a railroad company, a sworn list of which must be furnished the State Auditor within a stated time, to be assessed by the State Board of Equalization.

''Section 13027, Revised Statutes 1919, provides that all property of the railroad company not particularized by Section 13002 shall be assessed locally, and it will be seen that this section also particularizes somewhat the local property by saying what it includes, such as land, machine and work shops, roundhouses, warehouses and other buildings, goods and chattels and office furniture of whatever kind or character. These sections seem to be an undertaking to set forth in contradistinction what shall be termed distributable property and what may be termed the non-distributable property of railroads, and the sections named the assessing authority for each.

''The underlying principle characterizing the distinctions so made would seem to be that the distributable property consists of that which is used directly in the operation of the railroad, and the non-distributable property consists of such property whose use may be only indirectly involved.

''I take it that the particularization employed in Sections 13002 and 13027 was not intended by the Legislature to be the conferring of a power with limitations upon that power to tax only what was therein specified, but that the undertaking to particularize was intended to be illustrative of the method or manner of handling the property for taxation purposes; that the property known as the distributable property of the railroad company, from its character and manner of its use, could be better handled for taxation purposes

through the State Board of Equalization and a more nearly just assessment accomplished, and that for this reason the Legislature made it the State Board's duty to make the assessment, while it left to the local authorities the right to assess purely local property . . .

"There was no such particularization in providing for the assessment and taxation of bridges, telegraph, telephone and express companies; electric power and light companies, electric transmission lines and oil pipe lines, as was made by the Legislature in pointing out the method for taxing railroad property, but the section was made to refer back to the railroad statutes for the manner of taxation, and the two groups of statutes, I think, should be read together in order to arrive at the legislative meaning.

"In the light of all these statutes, when read together, it is the opinion of this Department that Section 13056, Revised Statutes 1919, as amended by the Act of 1923, means that such of the properties named therein as may be used distributably, including franchises, are to be assessed by the State Tax Commission, and that the remainder, or non-distributable property, is to be left to the local authorities for assessment according to the practice followed by the Tax Commission prior to the opinion of July 31, 1923."

Regardless, however, of the questions considered in the opinion, the action of the Assessor of the City of St. Louis in assessing the franchises of the relator corporations was entirely nugatory, because authority on his part so to do was wholly lacking.

It follows that the records relating to: the making of the assessments just referred to; the action of the Board of Equalization of the City of St. Louis confirming them; and their extension on the tax books of the city, should each and all of them be quashed.

It is so ordered. All concur, except *Graves, J.,* absent.